**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Gary M. Porter</u>

      **v.**                                    **Case No.   03-CV-200-PB**

<u>Warden, New Hampshire
State Prison, et al.</u>

<u>**MEMORANDUM AND ORDER**</u>

Gary Porter has filed a petition for writ of habeas corpus, challenging his conviction for aggravated felonious sexual assault, N.H. Rev. Stat. Ann. § 632-A:2, I(a), and kidnaping, N.H. Rev. Stat. Ann. § 633:1.  The primary grounds for his petition are: (1) that the trial court improperly denied him access to a medical and psychological evaluation of the victim; (2) that the trial court improperly prevented him from cross-examining the victim regarding past-allegations of sexual assault; and (3) that the prosecutor improperly appealed to the passions and prejudices of the jury in her closing argument.  The parties have filed cross-motions for summary judgment.  For the following reasons, I grant the state's motions and deny Porter's motion.

## I.   <u>BACKGROUND</u>

**A.   <u>The Assault</u>**[1]

The facts giving rise to this case occurred on November 27, 1995, when Porter attacked and raped his girlfriend, Judy Rossignol, in his mobile home in Weirs Beach, New Hampshire. Trial Transcript ("Tr."), Sept. 10, 1996 at 87-107.  According to Rossignol, Porter was angry over the fact that she wanted to end their relationship.  In an uncontrolled fury, he pinned her to his living room couch, choked her with his hands, wrapped his leather belt around her neck, and dragged her by her feet to his bedroom where he continued to choke and threaten her, and where he ultimately raped her.  <u>Id.</u>

Rossignol was finally able to escape when Porter, a diabetic, fell into a coma after attempting suicide by injecting himself with a heavy dose of insulin.  <u>Id.</u> at 117-22.  He was later found and saved by emergency medical technicians only after Rossignol called the fire department from her parents' home to alert authorities that Porter's life was in danger.  <u>Id.</u> at 126.

---

[1] I describe the background facts in a manner that is "consistent with the state court findings" of guilt.  <u>See</u> <u>McCambridge v. Hall</u>, 303 F.3d 24, 26 (1st Cir. 2002).

-2-

Rossignol gave a sworn statement describing the attack to Officer Douglas Jameson of the Laconia Police Department the next day.  Id. at 129.  She then underwent a physical examination at Lakes Region General Hospital where Officer William Robarge photographed her body.[2]  Id. at 130-31.  The photographs revealed bruising on her neck, on her right ankle, on the upper part of her chest, on her arms, and on the inner part of her thigh.  Id. at 132-34.

Rossignol reported that her clothes, including her brassiere, were torn from her body during the attack, as were the multiple sets of earrings she had been wearing that evening.  Id. at 92-99.  She also provided the ripped clothing to investigating officers the following day.  Id. at 136-38.  The earrings, which were embedded in Porter's couch, were recovered by Officers Jameson and Clary that afternoon.  Tr., Sept. 13, 1996 at 746-48. In the course of their search, the officers also recovered a

---

[2]  According to Rossignol's report, Porter had ejaculated on her chest.  Tr., Sept. 10, 1996 at 107-08.  Rossignol then wiped the ejaculation off.  The physical examination thus produced no evidence of seminal discharge.

note, penned by Rossignol to her son, John,[3] that Rossignol
reported she had begged Porter to allow her to compose after
Porter had repeatedly threatened her life.  Tr., Sept. 10, 1996
at 112.

**B.   <u>Pre-trial Rulings</u>**

Porter was indicted for aggravated felonious sexual assault,
N.H. Rev. Stat. Ann. § 632-A:2, I(a), and two counts of
kidnaping, N.H. Rev. Stat. Ann. § 633:1, on January 25, 1996.[4]
On April 26, 1996, Porter filed his first pre-trial motion for
discovery.  In this motion, he stated that Rossignol had been
"convicted in the Laconia District Court of DWI" and he requested
that the state produce "any substance abuse evaluation and
assessment" that may have resulted from this conviction.  App. to
Notice of Appeal to the New Hampshire Supreme Court, Vol. I at
59.  This motion was denied in a May 29, 1996 order.  <u>Id.</u> at 64.
According to the court, "The victim's medical records, if any,

---

[3]  The note was written on yellow paper and stated, "To
little John.  I love you.  Please remember me.  Love mum."  Tr.,
Sept. 10, 1996 at 111-112.

[4]  Porter was also charged and acquitted of attempted
escape, <u>see</u> N.H. Rev. Stat. Ann. §§ 629:1; 642:6.

are personal and confidential," id. at 73 (citing N.H. Rev. Stat. Ann. § 151:21, X (1995 Supp.), "Patient's Bill of Rights"), and a mere "general assertion" about the need to obtain this type information to prepare a cross-examination, or to offer it as relevant evidence at trial, was insufficient to trigger the right to have the materials reviewed *in camera* or otherwise produced. Id. at 73-74.

The prosecutor then filed her own pre-trial motion seeking, among other things, to prevent Porter from (1) questioning Rossignol regarding a past allegation of rape that Porter claimed Rossignol had made against her ex-boyfriend, Calvin Dunn, and (2) presenting evidence of Rossignol's alcoholism. Tr. of Mot. Hr'g., Sept. 3, 1996 at 44. Ruling from the bench, the court held that although Porter could not offer extrinsic evidence that Rossignol had made a past allegation of sexual assault against Dunn, he could inquire about the issue on cross-examination. Id. at 61. At the same time, the court barred Porter from questioning Rossignol about her alcoholism because it ruled that Porter had failed to demonstrate how Rossignol's past problems

with alcohol were relevant to her credibility.  Id. at 61-62.[5]

Porter responded by renewing his motion to discover evidence contained in Rossignol's medical and psychological records.  App. to Notice of Appeal to the New Hampshire Supreme Court, Vol. II at 131.  He specifically asked for evidence regarding "substance abuse and/or psychological evaluations" that had been conducted eight months earlier while Rossignol was attending a court-mandated Multiple Offender Program ("M.O.P.").  Id. at 132.[6]  The basis for his motion was his claim that the evaluation contained information regarding Rossignol's alcoholism and mental instability, evidence which he again argued was relevant to her credibility.  Id.  In addition, he referred to the Dunn assault, stating that "the alleged victim in the past has used this

---

[5]  The court granted Porter leave to revisit the issue as the trial unfolded.  Tr. of Mot. Hr'g., Sept. 3, 1996 at 62.

[6]  The "M.O.P." or "Multiple Offender Program" is run by the New Hampshire Department of Health and Human Services.  See http://www.dhhs.nh.gov/DHHS/IDIPMOP/multiple-offender.htm (last visited, Sep. 26, 2005).  A person is required to attend an M.O.P. upon conviction for a second or subsequent D.W.I. offense in the last seven to ten years.  Id.  The M.O.P. consists of a seven-day/six-night residential program, alcohol and drug education, and an evaluation conducted by a licensed or certified alcohol and drug counselor.  Id.

alleged incident of rape assault in the termination of prior

relationship"[7] (sic).  Id. at 136.

Porter read his motion for discovery into the record at the

beginning of trial.[8]  Tr., Sept. 10, 1996 at 9-17.  For the first

time, he also charged that the M.O.P. evaluation referred to

sexual assault allegations that Rossignol allegedly had made

against a minister and a friend of her father.  Id. at 15.  The

prosecutor responded by again opposing Porter's request for

access to the M.O.P. evaluation.  Id. at 17-18.  She also asked

the court to reconsider its prior decision to allow cross-

examination concerning the Dunn assault and sought an order

barring Porter from questioning Rossignol about the alleged

assaults by the minister and her father's friend.  Id.

The court ruled on these motions from the bench.  Adopting

the prosecutor's argument that Porter had failed to demonstrate

---

[7]  As the New Hampshire Supreme Court noted in resolving
Porter's direct appeal, however, Porter "did not argue to the
trial court that this prior allegation of sexual assault was
mentioned in the substance abuse evaluation."  State v. Porter,
144 N.H. 96, 100 (1999).

[8]  Prior to presenting his motion, Porter waived his right
to counsel, opting instead to represent himself with the aid of
standby counsel.  Tr., Sept. 9, 1996 at 2-14.

how evidence relating to Rossignol's alcoholism or mental instability was relevant to her credibility, the court denied Porter's motion for access to the M.O.P. evaluation.  Id. at 27. The court also declined to reconsider its ruling with respect to the Dunn assault, but granted the prosecutor's request to bar cross-examination regarding the other assaults.  The court based its latter ruling on the fact that Porter had failed to give the prosecutor advance notice of his intention to introduce evidence concerning the assaults.[9]  Porter responded to the ruling by stating, "All right.  I can – all right, Your Honor."  Id. at 38.

## C.   **The Closing**

Evidence closed on the fourteenth day of trial, and the parties gave their summations.  In the state's closing, the prosecutor called Porter "a pathological liar and a manipulator

---

[9]  Superior Court Rule 100-A requires that "any defendant who intends to offer evidence of specific prior sexual activity of the victim with a person other than the defendant shall file a motion" describing his justification for doing so "forty-five (45) days prior to the scheduled trial date."  N.H. Super. Ct. R. 100-A.  The court referred to this rule in its discussion, but at the prosecutor's urging, cited State v. Ellsworth, 136 N.H. 115 (1992), when it made its ruling.  Ellsworth does not discuss Rule 100-A.

to boot," "desperate," "dishonest," "jealous," "possessive,"

"inhumane," "controlling," a "performer and . . . charmer,"

"brutal," and "crafty."  Tr., Sept. 26, 1996 at 141-46.

Referring to the fact that Rossignol had testified on cross-

examination for three days, the prosecutor further commented that

> Judy Rossignol told you the truth here.  She has no
> motive whatsoever to tell you anything but that.  Why
> would she go through all of this, questioning by the
> police, probing at the hospital, physical probing, and
> then here on the witness stand [sic] revictimized by
> the defendant in cross-examination for days [sic] she
> wasn't proud to come in here and tell you about these
> sordid things.

Id. at 141.  With respect to the state's other witness, the

prosecutor stated, "The police didn't lie to you. . . .  The EMT

didn't lie to you. . . . All of them told it like it was.  And

all of them were subjected to the fire of this defendant's

protracted and often meaningless questioning."  Id. at 142.

She then observed,

> [Porter's] the one who is jealous.  He's the one who
> was possessive.  He's the one who needed to be in
> control.  And he still needs to be in control.  You saw
> his cross-examination yesterday afternoon and this
> morning.  Doesn't he want to be in control ultimately?

Id. at 142-43.  Then, as an examples of this type of behavior,

the Prosecutor asked the jury to recall how [Porter] "snapped at

[Rossignol when she] was on the witness stand," <u>id.</u> at 146, and how "he tortured [her] that night and again here on the witness stand." <u>Id.</u> at 162.  The prosecutor further asked the jury to "[t]hink about this: If he's so bold and inhumane in this open courtroom, what must he have been like that night." <u>Id.</u> at 143.

The prosecutor closed by stating:

> Judy Rossignol told you the truth about that night. And it was a night that she'd rather forget.  And she told you the pain, and she lived the pain on her face. You saw that as she spoke to you.  And she escaped the demon clutches of that defendant when he went comatose with his back arched, convulsing with his eyes open.

<u>Id.</u> at 162-63.

Porter objected twice during the prosecutor's closing argument, once when the prosecutor was describing inconsistencies in the way Porter's home was arranged when the police searched it, <u>id.</u> at 157, and a second time when the prosecutor recounted a conversation Rossignol had with Porter while he was in the hospital recovering from his suicide attempt.  <u>Id.</u> at 161.  At no point did Porter object to any other statement or argument made by the prosecutor.

**D.   <u>The Jury Instructions and the Verdict</u>**

Following closing arguments, the court instructed the jury

as to each of the offenses with which Porter was charged, and on
September 27, 2005, the jury found Porter guilty of two counts of
kidnaping[10] and one count of aggravated felonious sexual assault.
Tr., Sept. 27, 1996 at 5-7.  The court then sentenced Porter to
consecutive terms of 10 to 30 years for both the aggravated
felonious sexual assault conviction and the first kidnaping
conviction.  No sentence was imposed for the second kidnaping
conviction.  Tr. of Sentencing Hr'g, Nov. 26, 1996 at 79-81.

**E.   Porter's Direct Appeal**

Porter immediately appealed his convictions to the New
Hampshire Supreme Court.  In his appeal, he argued that the trial
court had erred in:

> (1) excluding evidence of the victim's character; (2)
> declining to review *in camera* the victim's substance
> abuse evaluation; (3) imposing a notice requirement for
> the admission of alleged prior false allegations of
> sexual assault; (4) denying him an opportunity to
> recall a witness; (5) consolidating the charges; (6)
> permitting the State to cross-examine him concerning
> facts underlying prior convictions; (7) failing to
> dismiss alternative kidnaping indictments; and (8)
> imposing extended terms of incarceration.

State v. Porter, 144 N.H. at 97-98.  Porter further argued "that

---

[10]   The jury convicted Porter of both kidnaping *and*
kidnaping with the purpose to commit an offense against the
person confined.

the prosecutor had violated his right to due process during closing arguments by repeatedly disparaging the manner in which he had conducted his defense." <u>Id.</u> at 98.

The supreme court rejected all nine of Porter's claims but found that the trial court had improperly based certain sentence enhancements upon previously served concurrent sentences.  It therefore remanded the case to the trial court for resentencing. <u>Id.</u> at 102.[11]  The court directly addressed the merits of Porter's claims that the trial court had improperly refused to conduct an *in camera* review of the privileged M.O.P. evaluation, and that the trial court had improperly denied Porter his right to cross-examine Rossignol regarding past allegations of sexual assault. As to the first claim, the court cited <u>State v. Gagne</u>, 136 N.H. 101, 105 (1992) for the proposition that "a defendant is entitled to an *in camera* review of confidential or privileged records if the defendant establishes a reasonable probability that the records contain information relevant and material to his

---

[11]   The resentencing hearing took place on November 12, 1999.  The trial court modified Porter's sentence to 10 to 20 years for the aggravated felonious sexual assault conviction, and three-and-one-half to seven years on the kidnaping conviction. Tr. of Sentencing Hr'g., Nov. 12, 1999 at 26-28.

defense."   <u>Porter</u>, 144 N.H. at 99.   The court then ruled that

> the trial court refused to conduct an *in camera* review
> because the defendant failed to demonstrate a
> reasonable probability that the records sought
> contained evidence relevant and material to his
> defense.   Since the victim's alleged emotional
> instability, alcoholism, and failure to follow
> treatment recommendations had no bearing on her
> character for truthfulness at trial, we agree with the
> trial court's conclusion.

<u>Id.</u> at 99-100.   As to Porter's claim that the evaluation

additionally "revealed an admission by the victim that she had

accused a former boyfriend of sexual assault," the court rejected

Porter's arguments by pointing out (1) that Porter did not argue

to the trial court that this allegation was in fact included in

the report, and (2) that he further failed to argue that it was

"false and material to his defense."   <u>Id.</u> at 100.

The court next considered Porter's claim that the trial

court had improperly prevented him from cross-examining Rossignol

regarding other past allegations of sexual assault.   As to this

line of argument, the court ruled that Porter had "acquiesced"

rather than "objected" to the trial court's ruling on the issue,

and that the trial court's ruling must therefore stand.   <u>Id.</u> at

100-101 (citing <u>State v. Brodowski</u>, 135 N.H. 197, 200 (1991) for

the proposition that "we see no reason to depart from the general principle that the rules of preservation are not relaxed for a pro se defendant").  Finally, the court rejected Porter's three remaining claims, including his prosecutorial misconduct claim, because the arguments were "either meritless . . . or were not properly preserved for appellate review."  Porter, 144 N.H. at 102 (citations omitted).

**F.   Porter's Petition for Writ of Habeas Corpus in State Court**

Porter petitioned the New Hampshire Superior Court for habeas corpus relief on April 28, 2000.  Among the grounds included in his petition was a claim that the poor conditions of the state prison library deprived him of his right to access the courts.  See Resp't's App. to Mot. for Summ. J. (Doc. No. 27), Ex. E at 9.  The court rejected this challenge, noting that to succeed on such a claim, a petitioner must prove that he suffered actual injury to a viable legal claim.  Id., Ex. F at 6-7.  The court ruled that the fact that Porter's briefs included case citations, in addition to the fact that he had had access to counsel at all stages of his litigation, proved that he had

suffered no such injury.[12]  Id. at 7.

## G.  Porter's Federal Petition for Writ of Habeas Corpus

Porter filed the present petition for writ of habeas corpus
(Doc. No. 3) in federal court on May 5, 2003.  His surviving
claims include:

(1) a claim that the trial court erred both by refusing to
review Rossignol's M.O.P. evaluation *in camera* and by
refusing to compel the prosecutor to produce the evaluation;

(2) a claim that Porter had been denied his right to
confront and cross-examine Rossignol regarding past
allegations of sexual assault she had made against a
minister and a friend of her father's;

(3) a claim that the state's closing argument constituted
an unconstitutional appeal to the passions and prejudices of
the jury;

(4) a claim that the library facilities available to
Porter in prison were so poor that Porter had been denied
access to the courts;

(5) a claim that Porter had been denied effective
assistance of counsel before trial because his attorney had
failed to argue effectively that he was entitled to
Rossignol's medical and psychological evaluations;

(6) a claim that Porter had been convicted in violation of
the Double Jeopardy clause because the jury found Porter
guilty of kidnaping on alternative theories; and

---

[12]  Porter appealed this decision to the New Hampshire
Supreme Court, but the court declined to review Porter's claim.
Resp't's. App. to Mot. for Summ. J. (Doc. No. 27), Ex. G, at 1.

-15-

(7) a claim that the trial court had improperly instructed the jury regarding the kidnaping charges by conflating the two alternative theories upon which a guilty verdict may rest.[13]

The parties have filed cross-motions for summary judgment with respect to these claims.  I consider their arguments below.

## II.  **STANDARD OF REVIEW**

### A.  **The Summary Judgment Standard**

The parties acknowledge that summary judgment in a habeas corpus proceeding is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Lavallee v. Coplan, 239 F. Supp. 2d 140, 143 (D.N.H. 2003) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby,

---

[13]   Magistrate Judge Muirhead dismissed the remaining claims in a June 28, 2004 Report and Recommendation (Doc. No. 12).  This court approved the Report and Recommendation in a July 14, 2004 Order (doc. no. 17).

-16-

Inc., 477 U.S. 242, 250 (1986).  A material fact is one that
affects the outcome of the suit.  See id. at 248.

**B.    The Antiterrorism and Effective Death Penalty Act Standard**

Porter's habeas corpus petition is governed by the
Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28
U.S.C. § 2254(d)(1).  The AEDPA states that a federal court may
grant habeas relief only if it finds that the state court
adjudication "resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly established
Federal law."  See Horton v. Allen, 370 F.3d 75, 79-80 (1st Cir.
2004).

Under the "contrary to" prong, the petition may be granted
if the state court "arrives at a conclusion opposite to that
reached by [the United States Supreme Court] on a question of law
or if the state court decides a case differently than [the
Supreme] Court has on a set of materially indistinguishable
facts."  Id. at 80 (quoting Williams v. Taylor, 529 U.S. 362,
412-13 (2000)) (internal quotation marks omitted).

Under the "unreasonable application" prong, the petition may
be granted only if the state court "identifies the correct

-17-

governing legal principle from [the Supreme] Court's decisions
but unreasonably applies that principle to the facts of the
prisoner's case."  <u>Horton</u>, 370 F.3d at 80 (quoting <u>Williams</u>, 529
U.S. at 413) (internal quotation marks omitted).  "To be an
unreasonable application of governing law, the state court's
determination must not only be incorrect but also be objectively
unreasonable."  <u>Horton</u>, 370 F.3d at 80 (citing <u>Williams</u>, 529 U.S>
at 410-11).  "In other words, if the petition presents a close
call, it must be rejected, even if the state court was wrong."
<u>Id.</u> (citing <u>Sarourt Nom v. Reilly</u>, 337 F.3d 112, 116 (1st Cir.
2003)).  "If, however, the petition presents a federal claim that
was raised before the state court but was left unresolved, the
AEDPA's strict standards do not apply" and the court will review
the claim <em>de novo</em>.  <u>Horton</u>, 370 F.3d at 80.


## III.  <u>DISCUSSION</u>

Porter's three primary arguments are that: (1) the trial
court should have reviewed Rossignol's M.O.P. evaluation <em>in
camera</em> and forced the state to produce it; (2) the trial court
denied Porter his Sixth Amendment right to cross-examine

Rossignol regarding past allegations of sexual assault; and (3) the prosecutor violated Porter's right to due process by improperly appealing to the passions and prejudices of the jury during her closing argument.  I evaluate each argument in turn and then briefly address Porter's remaining claims.

**A.    The M.O.P. Evaluation**

In its July 1999 opinion, the New Hampshire Supreme Court rejected Porter's claim that the trial court erred in failing to review Rossignol's M.O.P. evaluation *in camera.*  The court based its ruling on <u>Gagne</u>, a prior case in which it had considered the contours of a criminal defendant's federal constitutional right to have privileged documents reviewed *in camera*.  136 N.H. at 102.[14]  <u>Gagne</u>, in turn, relied on <u>Pennsylvania v. Ritchie</u>, 480

---

[14]  The state claims that the federal aspects of Porter's claims were first raised post-appeal.  In Porter's September 3, 1996 pre-trial motion for discovery, however, Porter explicitly invoked the federal constitution, <u>see</u> App. to Notice of Appeal to the Supreme Court, Vol. II at 137-38.  Further, he cited the New Hampshire Supreme Court's ruling in <u>Gagne</u>, and argued that he was entitled to the material as a matter of "due process."  <u>See</u> Brief for the Def. at 22.  Because <u>Gagne</u> considered the federal as well as the state constitutional grounds for granting *in camera* review, I disagree with the state that Porter failed to properly argue the federal aspects of his claims until after his direct appeal.

U.S. 39 (1987), for guidance on the question. Id. at 105.

According to the Gagne court, Ritchie, properly interpreted, held

that "in order to trigger an *in camera* review of confidential or

privileged records, the defendant must establish a reasonable

probability that the records contain information that is material

and relevant to his defense." Id. (citing, *inter alia*, State v

Hutchinson, 597 A.2d 1344, 1347 (Me. 1991) (interpreting Ritchie

and holding that the court must find that records "may be

necessary for the determination of any issue before" the court);

State v. Howard, 604 A.2d 1294, 1300 (Conn. 1992) (holding that

defendant must show some "reasonable ground to believe" that

failure to produce records might impair his ability to impeach a

witness)). Given that proof of "relevance" is the minimum

threshold for evidentiary admissibility, see Fed. R. Evid. 402,

and proof of "materiality" is required to make out a due process

claim against the state on the theory that a criminal defendant

has been denied exculpatory evidence, Ritchie, 480 U.S. at 57,[15]

---

[15] Because I grant the state's motion on relevancy grounds,
I need not consider whether the evidence he sought would also be
considered "material." Given the overwhelming physical evidence
of his guilt, however, I doubt whether Porter would be able to
prove that it was. See Ritchie, 480 U.S. at 57 (stating that
"[evidence] is material only if there is a reasonable probability

-20-

this ruling is not an "objectively unreasonable" interpretation

of Supreme Court precedent.   <u>Horton</u>, 370 F.3d at 80 (citing

<u>Williams</u>, 529 U.S. at 410-11).

    The next question, then, is whether the New Hampshire

Supreme Court's application of <u>Gagne</u> was "objectively

unreasonable."   The court first ruled that, to the degree Porter

argued that the M.O.P. evaluation contained general information

regarding "the victim's emotional instability" and "alcoholism,"

he had failed to demonstrate how either quality had any bearing

on Rossignol's "character for truthfulness."   This ruling is in

accordance with First Circuit precedent.   In <u>United States v.</u>

<u>Butt</u>, the First Circuit held that evidence of mental illness or

instability may be excluded if the witness in question has not

"exhibited a pronounced disposition to lie or hallucinate, or

[has not] suffered from a severe illness, such as schizophrenia,

that dramatically impaired her ability to perceive and tell the

truth" about the events in question.   955 F.2d 77, 82-83 (1st

Cir. 1992).   Porter failed to argue to the trial court that there

---

that, had the evidence been disclosed to the defense, the result
of the proceeding would have been different")(citation and
internal quotation marks omitted).

was a "reasonable probability" that the M.O.P. evaluation contained any information suggesting that Rossignol suffered from a mental impairment of this severity.  I therefore conclude that the supreme court's ruling regarding the trial court's refusal to examine these materials *in camera* on these grounds was not "objectively unreasonable."

The court's refusal to review the evaluation on the grounds that it contained information regarding Rossignol's allegation that she had been raped by Calvin Dunn also was not "objectively unreasonable."  The court based its ruling on (1) the fact that Porter did not argue to the trial court that this allegation was contained in the report, and (2) the fact that he failed to argue that the alleged statement was "false and material."  The reasonableness of the first basis for this conclusion is self-evident.  If Porter did not argue that the M.O.P. evaluation contained the information he sought, that information cannot be the basis for requiring *in camera* review.  The same is true with respect to the court's second ground for denial.  Unless there were some argument that Rossignol's claim that Dunn raped her was false, there could be no basis for concluding that evidence

concerning the allegation was relevant to Rossignol's
credibility.  The state's motion for summary judgment with
respect to the court's failure to review the M.O.P. evaluation *in
camera* is therefore granted and Porter's motion is denied to the
extent it addresses this issue.[16]

**B.    Cross-examination on Prior Sexual Assault Allegations**

Porter next argues that the trial court violated his Sixth
Amendment right to cross-examine Rossignol regarding past
allegations of sexual assault he claims she made against a
minister and a friend of her father.  The state's primary
contention is that Porter is not entitled to relief on this claim
in federal court because the New Hampshire Supreme Court disposed
of it on independent and adequate state law grounds.  See Gunter
v Maloney, 291 F.3d 74, 78 (1st Cir. 2002) (citing Coleman v.
Thompson, 501 U.S. 722, 750 (1991)).  I agree.

---

[16]  Because I rule that the supreme court did not err in
ruling that the trial court should have reviewed Rossignol's
M.O.P. evaluation *in camera*, I need not rule on whether the court
should have ordered the state to produce the evaluation.

Basing its claim in fact, if not in name,[17] on Superior Court
Rule 100-A, the trial court concluded that Porter could not
examine Rossignol regarding her alleged claim that she had been
sexually assaulted by a minister and her father's friend.  Rule
100-A requires a defendant to file a motion 45 days in advance
announcing his intention to question a witness in this manner,
see N.H. Super. Ct. R. 100-A.  The court ruled that Porter had
failed to comply with this requirement.  Rather than object to
this ruling, however, Porter acceded, stating, "All right.  I can
– all right, Your Honor."  It was on the basis of his failure to
object that the New Hampshire Supreme Court rejected Porter's
attempted appeal on this ground.  See Porter, 144 N.H. at 100
(holding that "[b]ecause the defendant did not object to the
ruling, we will not review it on appeal").

It is a basic principle of habeas corpus law that "if a
state court decision rests on the adequate and independent state

---

[17]  The trial court apparently misstated the basis for its
ruling, citing the State v. Ellsworth case rather than Rule 100-
A.  Because the state raised Rule 100-A as the basis for its
motion, and because the court mentioned it in its colloquy with
the state, this mistaken reference to Ellsworth does not affect
the disposition of this issue.

-24-

ground of procedural default, then federal habeas review is
unavailable absent a showing of cause and prejudice or a showing
that a miscarriage of justice will otherwise result."
McCambridge v. Hall, 303 F.3d 24, 34 (1st Cir. 2002).  This rule
"appl[ies] alike whether the default in question occurred at
trial, on appeal, or on state collateral attack."  Edwards v.
Carpenter, 529 U.S. 446, 451 (2000)(citation omitted).

In this case, Porter committed two procedural defaults.  The
first occurred when Porter failed to satisfy Rule 100-A.  This
was why the trial judge rejected Porter's argument.  The second
occurred when Porter failed to object to the trial court's ruling
that he could not raise the past allegations of sexual assault
during cross-examination.  This was the reason that the New
Hampshire Supreme Court affirmed the trial court's ruling.
Porter offers no proof that either rule is irregularly or
inconsistently applied.  Gunter, 291 F.3d at 79 (holding that a
state procedural ruling may bar habeas review, but only if it is
based on a rule that is "regularly and consistently applied").
Nor has Porter attempted to establish either cause and prejudice
for the default or that enforcing the default will result in a

miscarriage of justice.  Thus, I cannot review the merits of

Porter's federal claims with respect to this issue.  <u>Id.</u>  The

state's motion for summary judgment regarding Porter's Sixth

Amendment claim is therefore granted and Porter's motion

asserting the same issue is denied.

**C.   <u>Closing Argument</u>**

Porter next claims that the prosecutor violated his right to

procedural due process by improperly appealing to the passions

and prejudices of the jury during her closing argument. Porter

specifically complains that the prosecutor acted improperly by

vouching for her own witnesses, by demeaning Porter through

insults and epithets, and by negatively commenting on the manner

in which he conducted his defense.  Though I agree that many of

the prosecutor's comments were improper, I am not persuaded that

her misconduct entitles Porter to habeas corpus relief.

Improper argument violates a defendant's due process rights

only if the argument "so infected the trial with unfairness as to

make the resulting conviction a denial of due process."[18]  <u>Donelly</u>

---

[18]  Improper argument can also violate a defendant's
constitutional rights if it impermissibly burdens a specific
constitutional guarantee such as the defendant's Fifth Amendment
right against self-incrimination, <u>see</u> <u>Griffen v. California</u>, 380

v. DeChristoforo, 416 U.S. 637, 643 (1974); see also Amrault v.

Fair, 968 F.2d 1404, 1406 (1st Cir. 1992).  The Supreme Court has

not further defined this general standard but those lower courts

that have been called upon to apply it have treated the standard

as a totality of the circumstances test that encompasses factors

such as the nature and frequency of the offending statements, the

context in which the statements were made, and the strength of

the evidence against the defendant.  See, e.g., Abela v. Martin,

380 F.3d 915, 929 (6th Cir. 2004); Bentley v. Scully, 41 F.3d

818, 824 (2d Cir. 1994); see also United States v. Nelson-

Rodriguez, 319 F.3d 12, 38 (1st Cir. 2003) (challenge based on

---

U.S. 609, 615 (1965), or his Eighth Amendment right against cruel
and unusual punishment, see Caldwell v. Mississippi, 472 U.S.
320, 328-29 (1985).  Cf. Portuondo v. Agard, 529 U.S. 61, 65
(2000) (rejecting claim that argument impermissibly burdened
defendant's Fifth and Sixth Amendment rights to be present during
trial and confront his accusers).  I have not considered whether
Porter could maintain a claim of this type for two reasons.
First, he has not attempted to present such a claim in the
petition he filed in this court.  Second, he would be barred from
raising this type of claim in federal court in any event because
he did not raise a comparable claim in state court.  See, e.g.,
Picard v. Connor, 404 U.S. 270, 277 (1971).  Thus, although at
least one circuit court has held that a prosecutor violates a
defendant's confrontation clause rights by complaining during a
closing argument that the defendant forced the victim to attend
the trial and thereby relive the attack, see Burns v. Gannon, 260
F.3d 892, 896 (8th Cir. 2001), I examine Porter's challenge to
the argument only under the due process clause.

supervisory power).  I adopt a similar approach in resolving

Porter's due process claim.[19]

     Given the totality of the circumstances in which the

prosecutor gave her closing, I conclude that her misconduct was

severe.  A cardinal rule of prosecutorial summation is that the

prosecutor may not appeal to the passions and prejudices of a

jury in the course of her argument.  See Nelson-Rodriguez, 319

_____

     [19]  I review Porter's due process claim *de novo* rather than
under the deferential standards of review that govern most habeas
corpus claims.  The First Circuit has held that AEDPA's
deferential standards of review apply only to claims that are
adjudicated on their merits.  See Fortini v. Murphy, 257 F.3d 39,
47 (1st Cir. 2001).  In this case, as respondent concedes, the
New Hampshire Supreme Court failed to explain whether it was
rejecting Porter's challenge to the closing argument because it
was meritless or because it was procedurally barred.  See Porter,
144 N.H. at 102.  In such cases, it is improper to treat the
court's decision as a ruling on the merits.  See DeBerry v.
Portuondo, 403 F.3d 57, 67 (2d Cir. 2005) (decision that claim is
"either unpreserved for appellate review . . . or [is] without
merit" is not a decision on the merits).  Although a superior
court judge later rejected Porter's habeas corpus petition
raising the same issue on substantive grounds, she did so because
she ruled that the prosecutor's argument was appropriate under
the circumstances.  See Res't.'s App. to Mot. for Summ. J. (Doc.
No. 27), Ex. F at 1. Even if I were to review this ruling
deferentially, I would reject it because it is an unreasonable
application of supreme court precedent regarding improper
prosecutorial argument.  Because neither the superior court nor
the supreme court clearly ruled on the merits of the claim that
the prosecutor's arguments, although improper, did not violate
Porter's due process rights, I examine this issue *de novo.*

F.3d at 39 (citing 5 W.R. LaFave et al., Criminal Procedure §
24.7(e), at 558 (2d. ed. 1984)); United States v. Martinez-
Medina, 279 F.3d 105, 119 (1st Cir. 2002) (stating that appeals
to "the jury's emotions" are "plainly improper")(citation
omitted).  The prosecutor did so in this case in three
impermissible ways.

    First, in the course of her argument, she relied on a
multiplicity of epithets and negative imagery, calling Porter,
among other things, "a pathological liar and a manipulator to
boot," "desperate," "inhumane," and "crafty," and at one point
going so far as to use Porter's insulin-induced physical state to
conjure images of the satanic.  This was plainly improper.  Cf.
Martinez-Medina, 279 F.3d at 119 (concluding that "the
prosecutor's characterization of the defendants as 'hunting each
other like animals'" was "especially inflammatory and improper").

    Second, by repeatedly stating that Rossignol had told the
truth and that the state's other witnesses had not lied, the
prosecutor put the "'prestige of the government behind a witness
by making personal assurances about the witness'[s]
credibility.'" U.S. v. Cruz-Kuilan, 75 F.3d 59, 62 (1st Cir.

1996)(quoting <u>U.S. v. Neal</u>, 36 F.3d 1190, 1207 (1st Cir. 1994))

(holding that such practices are improper vouching); <u>Cf.</u> <u>United</u>

<u>States v. Auch</u>, 187 F.3d 125, 130-31 (1st Cir. 1999)(similar);

<u>United States v. Wihbey</u>, 75 F.3d 761, 771-72 (1st Cir. 1996)

(similar).  This was also improper.

     Third, the prosecutor impermissibly encouraged the jury to

draw an adverse inference against Porter because of the way in

which he conducted his defense.  She did this by directly

denigrating the manner in which Porter conducted his cross-

examination of Rossignol (at one point characterizing his

questioning as "protracted and often meaningless"), and by asking

the jury to associate Porter's decision to do so with the crime

for which he stood accused (the prosecutor stated that Rossignol

had been "revictimized by the defendant in cross-examination for

days").[20]

---

     [20]  It is difficult to disagree with the prosecutor's
suggestion that Porter's cross-examination of Rossignol was
excessive.  The proper remedy for such misconduct, however, is to
seek reasonable limitations on the cross-examination rather than
to argue that a defendant should be found guilty because of the
manner in which he conducted his defense.  To be sure, a
prosecutor is entitled to argue that a prosecution witness's
testimony is credible because she had no motive to subject
herself to the rigors of trial by making false charges.  The
prosecutor crossed the line in this case when she suggested that

Indeed, were the evidence against Porter not so strong, the prosecutor's conduct in this case could well have been grounds for a retrial.  Photographs taken of Rossignol's body the day after the attack revealed marks and bruises on her neck, on her right ankle, on the upper part of her chest, on the inner part of her thigh, and on her arms.  This physical evidence, along with the ripped clothing she provided to the officers during the course of her physical examination, the earrings embedded in Porter's couch that officers recovered during their search of Porter's home, and the note Rossignol penned to her son in the face of Porter's repeated death threats, corroborates Rossignol's version of the events that occurred on November 27, 1995.  Thus, a review of the evidence demonstrates that Porter is most assuredly guilty.

In light of this evidence, I conclude that Porter has failed to establish that the prosecutor's comments violated his right to procedural due process.[21]  See Darden v. Wainwright, 477 U.S. 168,

_____

Porter should be found guilty because he had "revictimized" and "tortured" the victim by subjecting her to a trial and forcing her to undergo cross-examination.

[21]  Even if Porter could establish that he was denied his right to due process, he would not be entitled to habeas relief.

182 (1986) (refusing to grant a new trial based on improper

argument in part because "the weight of the evidence against

petitioner was heavy," and the "overwhelming . . . circumstantial

evidence . . . [suggested]  guilt on all charges") (quotation

omitted).  The state's motion with respect to this claim is

therefore granted and Porter's motion is denied.

**D.   Porter's Remaining Claims**

   **1.   Right of Access to the Courts**

Porter next argues that his Fourteenth Amendment right of

access to the courts has been denied.  The New Hampshire Superior

Court reached the merits of this issue in its August 11, 2000

order.  Resp't's. App. to Mot. for Summ. J. (Doc. No. 27), Ex. F

at 5-7.  The AEDPA therefore requires that I uphold the state

court's ruling unless it is either contrary to supreme court

precedent or an unreasonable application of such precedent.

---

Trial errors, such as improper prosecutorial argument, ordinarily
will not entitle a habeas corpus petitioner to relief unless they
"'had substantial and injurious effect or influence in
determining the jury's verdict.'"  Brecht v. Abrahamson, 507 U.S.
619, 637 (1993) (quoting Kotteakos v. U.S., 328 U.S. 750, 776
(1946).  The same evidence that leads me to conclude that the
prosecutor's misconduct did not violate Porter's due process
rights convincingly demonstrates that her improper arguments do
not entitle Porter to habeas corpus relief under Brecht.

Horton, 370 F.3d at 80 (citing 28 U.S.C. § 2254(d)(1)).

The superior court rejected Porter's access to the courts claim because it determined that he had failed to prove that he had suffered actual injury.  Resp't's. App. to Mot. for Summ. J. (Doc. No. 27), Ex. F. at 6-7. According to the court, that "the petitioner . . . had counsel throughout the course of his case, both as stand-by counsel at trial and on appeal, and cited law in many of his pleadings to the Court" demonstrated that he had suffered no such injury.  Id. at 7.  Porter has failed to challenge the court's ruling on this point and I will not speculate as to how, in light of this finding, Porter could credibly claim that he was denied his right of access to the courts.  See Bolvin v. Black, 225 F.3d 36, 42 (1st Cir. 2000) (citing Lewis v. Casey for the proposition that the "right of access to the courts is narrow in scope," 518 U.S. 343, 360 (1996), and for the proposition that a prisoner's constitutional rights are satisfied as long as the prisoner receives "the minimal help necessary to present legal claims," 518 U.S. at 360)(internal quotation marks omitted).  The state's motion for summary judgment with respect to Porter's right of access claim

is therefore granted and Porter's motion addressing the same
issue is denied.

### 2. Double Jeopardy and Improper Jury Instruction Claims

Porter's final claims are that his Fifth Amendment double
jeopardy rights were violated, and that the trial judge
improperly instructed the jury as to the kidnaping charges.
Porter has not, however, addressed the state's motion for summary
judgment with respect to the merits of these claims anywhere in
his briefing.

As the First Circuit has stated, it is not the job of "the
court to do counsel's work." United States v. Zannino, 895 F.2d
1, 17 (1st Cir. 1990).  Issues "unaccompanied by some effort at
developed argumentation . . . are [thus] deemed waived." Id.
(citations omitted); see also, United States v. Candelaria-Silva,
166 F.3d 19, 38 (1st Cir. 1999) (stating that the failure to
develop an argument or to cite any supporting authority is
grounds for dismissal).  Because Porter has made no effort at
this stage of litigation to develop arguments with respect to
these claims, I deem them waived.  The state's motion for summary
judgment as to these issues is therefore granted and Porter's

-34-

motion addressing the same issue is denied.

### III.   CONCLUSION

For the reasons set forth above, the state's motions for summary judgment (Doc. Nos. 27 and 34) are granted and Porter's motion is denied (Doc. No. 33).  The clerk is instructed to enter judgment accordingly.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 29, 2005

cc:  Nicholas P. Cort, Esq.
     Christopher M. Johnson, Esq.